Mr. Kugelman, I wonder if you might begin by clarifying what your client's name is because it's spelled in various different ways. Yeah, it's Ilija Matusko. Matusko. Thank you. Apologies if there was a misspelling. Thank you. You may proceed. You may please the court. Alex Kugelman on behalf of Ilija Matusko. Mr. Matusko and I thank you for your consideration. I'd like to reserve about three minutes if possible. Two issues were briefed in this matter, standing and notice and timeliness. Mr. Matusko's argument will primarily focus on the standing issue, but is prepared to address the notice and timeliness issue as well. Mr. Matusko's claim materially differs from the other matters to be heard today. It is the only claim of the claimant pled a user profile, actually transferred Bitcoin to Silk Road, and had a Bitcoin equivalent balance on the marketplace prior to the seizure. While the government expresses concern that anyone reading about the forfeiture on the Internet may assert claims, Mr. Matusko is far from that. In fact, the government confirmed these material allegations. Mr. Matusko and any Silk Road user that still had Bitcoin equivalent balance has standing to assert a financial interest in the Silk Road Bitcoin. The district court concluded that Mr. Matusko's Bitcoin could not simultaneously be held at Silk Road in the 1HQ3 wallet. However, to paraphrase Special Agent Jeremiah Haney, the Silk Road used tumblers to mix the Bitcoin at the time the user made the deposit. The specific Bitcoin deposited no longer existed, and Silk Road users did not control the Bitcoin wallet. Thus, the Bitcoin became untraceable. Mr. Matusko's property interest is not in any specific Bitcoin, but to the return of an equivalent amount, not the actual Bitcoin deposited. But he still had, as I understand it, he still had his account at Silk Road even after the theft that diverted the Bitcoin to the 1HQ3 wallet. So, you know, the day after that theft took place, he could have gone and gotten his Bitcoin out, and he didn't. So why does that mean that he has an ownership interest in this wallet? So I'll answer that with two statements by the government in their brief. The first, the government described that Silk Road users controlled and owned were Bitcoin equivalents credited to their accounts because it's a fungible asset. And second, in kind of addressing that issue, the government contended on brief that, quote, it meant that Matusko most likely lost access to a Silk Road user account and his Bitcoins therein at the time of the theft. If it's fungible, what does it matter? He can still access it on his Silk Road account. What does it matter that it might not be the exact same Bitcoin that went to the wallet? I agree that that's not. I think the difference is that the Bitcoin that were stolen in the hack came from originally a general pool. And I was later clarified that that general pool was sourced from 3014 user wallets. Mr. Matusko had an interest in the return of the 48 Bitcoin that he deposited. He had ownership over that throughout the entire time. And he still, to this day, owes that amount. But if it's fungible, why does that matter? He still has 48 Bitcoin. It matters because the government is contending that the hack did not take Mr. Matusko's specific Bitcoin. And from Mr. Matusko's perspective, each Silk Road user that had an equivalent balance has a right to the return of that equivalent balance. Just like if a bank had deposits, those deposits, regardless of the $100 bill that I deposit, I have right to my $100 back whether there's an intervening event thereafter. Even if you still have $100? That's the point that I think Judge Koh is making. He still had his 48 Bitcoin. It is not the specific Bitcoin or the ability to withdraw it. It is the fact that he had a right to a Bitcoin equivalent. And the hack nor the seizure ended that right to the Bitcoin equivalent to be returned. The government and the district court offered the analogy of the depositor in the bank and somebody else robs the bank, right? If there's later a forfeiture proceeding against the money that the bank robber took, do you think a depositor can show up in a certain interest? Well, I mean, I think a bank is an interesting analogy. And there's some different rules due to FDIC and all that, but let's take that to the side. I think a depositor would have a right to the return. So imagine the robber took the entire amount that was in the bank, such that the bank could no longer repay its depositors. Well, that's changing the hypothetical from what we have. I mean, that's departing from the facts of this case in a way that is potentially significant. So imagine the robber doesn't take the entire contents of the bank. So if that did occur, first, I don't think the government would try to bring a forfeiture action against those proceeds. I think they would want to return those to the depositors that originally deposited if they had not been made whole yet. In the earlier argument, there was questions about summary judgment standard versus on the pleadings. From Mr. Matusko's perspective, he offers really no opinion and really asked the court to look at the declarations offered by the government in support of its motion. Because the government was defending from claims that were coming from different angles, there were statements made that are hard to sometimes reconcile regarding the tracing. Originally, Special Agent Haney, as I discussed earlier, quote in the brief, nothing in Special Agent Haney's declaration explaining the funding of the relevant wallets even states that the addresses were ones associated with Silk Road user accounts. However, I believe in a declaration, I believe in response to Battle Born, Special Agent Haney did declare that those were funded by 3014 deposit addresses for Silk Road users. It's unclear how to square those. And further, I will note that despite all the analysis and knowledge of Special Agent Haney, it was a tremendous law enforcement investigation. At no time is there a declaration saying of those 3014 wallets that none of those were related to Mr. Matusko. And I think that's a glaring omission. Can I ask you a question on timeliness? What's your authority that if the government doesn't provide direct notice to a specific claimant, that excuses untimeliness in the filing of the claim? Well, I think from Mr. Matusko's perspective, he does not believe that necessarily he would deserve direct notice, that he was a known potential claimant. I think that the material issue here is that the attempt at notice was what was really lacking. And I know I'm running out of time here, but I do want to just read this quote from the brief. Given that Silk Road was an illegal marketplace, not a cryptocurrency deposit or exchange, it was reasonable for the government to believe that Silk Road users could not successfully claim to be innocent owners of the Bitcoin they deposited into those Silk Road user accounts. In other words, the government unilaterally determined that notice requirements did not matter. So I think because notice was really not met, the clock has not started for the claims. No, the government provided notice. You're just saying they can't do a general notice, they have to do one specifically to me as a specific claimant. That is not Mr. Matusko's argument. That's how it was characterized. In a case where, quote, the buyers and sellers involved in these transactions were spread across the world, from Argentina to Australia, from the United States to Ukraine, I think the forfeiture manual requires more effort than simply the website in the U.S. You wanted to reserve the rest of your time? Thank you. Ms. Chan. May it please the Court, my name is Mary Jean Chan and I represent the United States in this appeal. The district court rightly found that Matusko failed to make an unequivocal assertion of ownership in his untimely claim and also that the evidence would not allow a reasonable fact finder to conclude that Matusko had an ownership interest given the undisputed fact that Matusko could withdraw his 48 Bitcoin from Silk Road after the theft by Individual X, which eventually funded the 1HQ3 address. So the claim very specifically says that the 48 Bitcoin... Could I ask you, on the verified claim, paragraph 2 says, Claimant is the original rightful and innocent owner of at least 48 Bitcoins. Why isn't that the unequivocal statement of ownership? That is undermined by the subsequent sentence that says the 48 Bitcoin remained idle in the claimant's Silk Road account thereafter and there being no assertion of being affected by the theft by Individual X at all. So there's no link. And again, even though there is an assertion, it's undermined by further assertions within the verified claim. And that makes it equivocal as opposed to unequivocal. If it had not had that subsequent sentence, I agree, Your Honor, it would seem on its face to be unequivocal. But because there is that subsequent sentence that basically admits that the 48 Bitcoin was not affected by Individual X's theft from Silk Road, it does not amount to an unequivocal assertion of ownership interest. Furthermore, the evidence, even though there was quite a lot of it, didn't really dispute this. It never disputed this. In fact, there was a lot of evidence that talked about exactly how Silk Road operated, and this was undisputed. In fact, the declaration submitted by Matusko himself talked about how somebody would deposit Bitcoin into an address held by Silk Road, but they never held the private keys to that address. It was essentially exchanged into these credits. And they could withdraw the Bitcoin, but they couldn't control the address. And so there was fungibility. The only theory that Matusko really presented was somehow that if you put any money into Silk Road at any point, if you're a user, when Silk Road was the victim of a theft, then every single person who was a user was therefore entitled to claim what was stolen. And that is not something that this Court, I think, I think the analogy with the bank is exactly apt in this context. And I'm not saying that Silk Road is equivalent to a bank in every context. But for purposes of this, this Court has rejected that notion. With respect to the timeliness issue, it should be noted that the court order here was actually pretty explicit in denying kind of an extension of time here. If you go to Excerpts of Record 11, the court says even assuming Matusko should be relieved from the filing deadline. And that, I think, distinguishes the court's order from some of the other orders because it is saying essentially he is not relieved from the filing deadline. But even if he were, there are other bases upon which we can and I should strike his claim. But if the court addressed the merits, which the district court did, then shouldn't we assume they excused the untimeliness? No, I don't think so because the court oftentimes will have alternate grounds. And this is an alternate ground. They can say, for example, we think that it's untimely. But even if it were not untimely, here are these other reasons why I would grant the motion anyway. And I think that's something that's quite commonly done. And here is what the court did, even though he did it very concisely. Well, I mean, concisely is maybe being generous. He didn't include the I find that it was untimely part, right? He didn't, but he said even assuming Matusko should be relieved from the filing deadline, which I think this court can read as he isn't. But even if he were in the alternative, then it's still not good enough. With respect to Matusko's argument about direct notice, Your Honor, that he was not entitled to direct notice because the government did not reasonably believe upon the information that it had that he was a claimant. This is both because Silk Road, I mean, based upon the government's information, we understood that the individual acts had stolen from accounts that were not user accounts, but the general pool of accounts. So it didn't affect individual users. And so there was no reason to make an effort to really notify the Silk Road users. But secondly, Agent Haney's declaration shows exactly the kinds of records that Silk Road, which was calculated to preserve anonymity for its users, kept. And for Hanson 5, which was Matusko's account, which we only knew about once he filed his claim, there's no contact information. There's nothing that links him to Matusko. There's simply this Hanson 5 username and the 47.25 or whatever the exact amount of Bitcoin that was in his account that we've been calling 48 Bitcoin. So he wasn't entitled to direct notice. But even if he were entitled to direct notice, it wouldn't be proper to raise it in this posture. His relief would be to move to set aside the declaration of forfeiture under 18 U.S.C. 983E. For these reasons, we ask this court to affirm. Thank you. Thank you. Mr. Kruvelman. Thank you. Regarding the question of whether the issue of timeliness was addressed, and I think there's a strong implication that it was addressed. I think if I had to guess, I can understand where the court's probably going with that. I do think this court does have the ability, just as the government suggests that they may affirm that, I think they can also reverse that. I think that goes hand in hand. Again, Mr. Matusko is not saying direct notice. Duesenberry v. U.S. 534 U.S. 161. The government must take actions reasonably calculated under all the circumstances to notify claimants. Again, another sentence from the prosecution. The seizure of the website affected tens of thousands of website's worldwide users. And I believe that the Forfeiture Manual discusses steps to take when the government knows that potential claimants are overseas. I think the reality is. So what do you think they should have done by way of notice that they failed to do? Publication in other countries in that language. And that's part of the Forfeiture Manual talking about trying to reach potential claimants. But they had no idea which, so just like every country around the world? Because they had no idea from the records what country people might be in, right? I wouldn't agree with that. So I don't have the quote right in front of me, but Special Agent Haney talks about those servers contain every transaction and all the data on every user. At the very least, IP addresses, right? And if in the prosecution they can say there's people in Argentina, there's people in Australia, there's people in Ukraine, I presume they have a basis for that. And so from Mr. Matusko's perspective, I think it's. Well, the government isn't going to send out a task force of 1,000 people unearthing these potential claimants. They can't take reasonable steps just as they do here in the U.S. for potential for unknown claimants to post something they actually could see. And even if you look at the potential. It's not the whole reason why people were on Silk Road was for anonymity. So just because you say, oh, my server's in country X, that doesn't mean that's where you are or that's the language that you speak. I guess I'm just not clear. I would agree. And to answer that question, because they're anonymous does not mean they don't get. There's not notice requirements for them. And again, not requesting, you know, providing every single person, but at least putting a notice that was reasonably calculated to inform them of what's going on. Thank you for your time. Thank you, counsel. Thank both counsel and the cases submitted.
judges: MILLER, KOH, Lynn